FILED
JANUARY 25, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08 C 584

JUDGE BUCKLO
MAGISTRATE JUDGE COLE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Citadel Investment Group, L.L.C.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. _____ |
| **William Yang, Mark Ma,** ) | |
| **Natacha Zhang, individuals and** ) | |
| **Does 1-10** ) | |
| ) | The Honorable _____ |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER**

**I.      INTRODUCTION**

This is an action for trademark infringement, cybersquatting, and unfair business practices, involving a website designed to defraud consumers and to fraudulently exploit Plaintiff Citadel Investment Group L.L.C's ("Citadel") name, likeness, and brand in order to perpetuate such a fraud. Defendants maintain a registered domain name consisting of a play on Citadel's name at which they maintain a website designed to defraud visitors into believing the site and transactions conducted through it are affiliated with Citadel. The website, which is a clone of an old version of Citadel's website, is replete with information about Citadel, its executives, policies, and employment opportunities. Of grave concern is the invitation to logon to the web site with user ID and password. The obvious intended ramifications of this activity are theft of confidential information.

Defendants' use of Citadel's trademarks and infringing domain name, identity, and images are clearly designed to mislead visitors into believing that the site is associated with Citadel. In addition, whatever illegal enterprise taking place via Defendants' website is creating

the wrongful impression that Citadel is sponsoring such activities. Given the immediate, serious, and irreparable damage being caused to Citadel and, potentially, any visitors to the infringing website on a daily basis, Citadel seeks a temporary restraining order or, in the alternative, a preliminary and permanent injunction.

## II.    STATEMENT OF FACTS

### A.    Citadel's Background and Trademarks

As stated in its Verified Complaint, Citadel is a Delaware limited liability company with its principal place of business located at 131 South Dearborn Street, Chicago, IL 60603. Citadel was founded in 1990 and, since then, it has grown into one of the world's largest and most sophisticated alternative investment institutions. Citadel employs more than one thousand professionals world wide and has offices in New York, Chicago, San Francisco, London, Bermuda, Hong Kong and Tokyo. Its investors include endowments, pension funds, foundations and other institutional investors, as well as high net worth individuals. Currently, Citadel manages over $17 billion in investment capital.

The company has its own website at www.citadelgroup.com that allows investors to conduct business online. Citadel owns several trademarks registered both federally or on a state basis. One such trademark, Registration No. 2,812,459, covers its image CITADEL and corresponding design. See Exhibit A to Verified Complaint, filed herewith.

### B.    Defendants' Infringing Use of the Citadel Marks and Domain Name

The website www.citadel-group.net infringes Citadel's 2,812,459 registered trademark. Attached as Exhibit D to Plaintiff's Verified Complaint, filed herewith, are printouts from the WHOIS database reflecting registration information for www.citadel-group.net. Attached as Exhibit B to Plaintiff's Complaint are true and correct copies of the home pages

from the www.citadel-group.net website. Everything about the design of this website is intended to create the false impression that Defendants are affiliated with Citadel or that the website belongs to Citadel. The Defendants' website is a cloned version an older version of Citadel's website. It contains some modifications, including contacts, email addresses, Chinese language script, a Chicago address not affiliated with Citadel and a login and password section not affiliate with Citadel.

Defendants use the website to deceive visitors that they *are* Citadel and to mislead the visitor into offering his or her password information to Defendants for unknown purposes. Thus, not only are Defendants seeking visitors' private investing information by deceit, but they also tarnish Citadel's reputation and goodwill by associating the company with Defendants' illegal enterprise and threaten the integrity of legitimate customers' confidential information.

## III. ARGUMENT

### A. The Legal Standard for a Temporary Restraining Order

Courts consider the following factors in determining whether to issue injunctive relief: (1) whether there is some likelihood that the requesting party will prevail on the merits, and (2) whether the moving party has no adequate legal remedy and will suffer irreparable harm if relief is denied; (3) whether the harm to the movant if relief is denied outweighs the harm to the nonmovant if relief is granted; and (4) the public interest. <u>Erickson v. Trinity Theatre, Inc.</u> 13 F.3d 1061, 1067 (7th Cir. 1994); <u>see also</u> <u>Dulisse v. Park Int'l Corp.</u>, No. 97 C 8018, 1998 WL 25158 (N.D. Ill. Jan. 9, 1998) (applying the factors listed above in moving party's request for a temporary restraining order).

**B.     Likelihood of Success on the Merits**

    **1.     Citadel is Likely to Prevail on Its Infringement and Unfair Competition Claims.**

Citadel can establish a strong likelihood of prevailing on the merits of its trademark infringement and unfair competition claims.[1]  In order to prevail on a trademark infringement claim, a plaintiff must show (1) that it has a protectable trademark, and (2) a likelihood of confusion as to the origin of defendant's product.  Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 897 (7th Cir. 2001).  Sections 32 and 43(a) of the Lanham Act specifically prohibit use of a mark that is "likely to cause confusion, or to cause, mistake, or to deceive" as to affiliation, connection, or association of Defendant with another person, or as to origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.  15 U.S.C. §§ 1114, 1125(a).  Likelihood of confusion on the part of the consuming public is the crucial issue for trademark infringement claims under the Illinois Deceptive Trade Practices Act and the common law. See Munters Corp. v. Matsui Am. 730 F. Supp. 790, 800 (N.D. Ill. 1989), aff'd 909 F.2d 250 (7th Cir. 1990); McGraw-Edison Co. v. Walt Disney Prods., 787 F.2d 1163, 1174 (7th Cir.1986) ("Likelihood of confusion has the same meaning in unfair competition cases under the Illinois Deceptive Trade Practices Act as it has in traditional infringement cases" (marks and citation omitted)).  Accordingly, this memorandum discusses these causes of action collectively.

    Here, Citadel has clearly established protected rights in its image CITADEL and corresponding design, registration number 2,812,459, and its domain name citadel.group.com. As set forth above, Citadel has grown into one of the world's largest and most sophisticated

---

[1] 15 U.S.C. § 1114(a), 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2, Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, and the common law causes of action alleged in Counts I, II, IV, and V all provide a remedy for trademark infringement or unfair competition.

alternative investment institutions.  The company currently manages over $17 billion in investment capital.

There is also a strong likelihood of confusion in this case.  While courts in this Circuit typically apply a factors-based test to determine whether a likelihood of confusion exists between two marks, the inquiry is different when, as here, Defendants are using Citadel's own mark as a means of operating.  Bernina of Am., Inc v. Fashion Fabrics, Int'l, Inc., No. 01-C-585, 2001 U.S. Dist. LEXIS 1211, at *5 (N.D. Ill. Feb. 9, 2001)(granting a temporary restraining order against defendant whose website made it appear to be an authorized dealer for plaintiff's products and noting that the standard for a temporary restraining order and a preliminary injunction are identical); see generally 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25.43, at 25-101.

Courts do not hesitate to grant relief in cases were entities misrepresent the nature of their affiliations with trademark holders, including on the Internet.  See Baldwin Piano, Inc. v. Deutsche Wurlitzer GMBH, No. 03-C-2105, 2004 U.S. Dist. LEXIS 2380, at *6 (N.D. Ill. Feb. 17, 2004) (granting partial summary judgment to the plaintiff trademark holder on its infringement and unfair competition claims, where defendant used the plaintiffs' trademark in product promotions and on its website even after plaintiff terminated the licensing agreement between the parties); Nav-Aids Ltd. v. Nav-Aids USA, Inc., No. 01-C-0051, 2001 U.S. Dist. LEXIS 17619, at *29 (N.D. Ill. Oct. 25, 2001)(granting plaintiff's motion for a preliminary injunction where defendant-distributor continued to use the domain names "navaidssltd.com" and "nav-aidsltd.com" even after the plaintiff-manufacturer terminated the parties' distributorship agreement); Bulova Corp. v. Bulova Do Brasil Com, 144 F. Supp. 2d 1329, 1330 (S.D. Fla. 2001)(granting a preliminary injunction to the plaintiff trademark holder where the

defendant-subdistributor used the website "bulova.com.br" to sell the plaintiff's products even after the plaintiff terminated the distributorship agreement).

Here Defendants are trading off of Citadel's name and reputation and are deliberately creating confusion as to their affiliation with Citadel in order to operate their illegal enterprise.  The www.citadel-group.net domain name itself conveys that Defendants are in fact Citadel.  Bulova Corp., 144 F. Supp. 2d 1329, 1330 (preliminarily enjoining defendant from using the mark "Bulova" in its domain name or company name, or in any other confusingly similar manner, because this intentional use of plaintiff's mark was generating consumer confusion).  Moreover, the website maintained at www.citadel-group.net is specifically designed to create the impression that the website is associated with Citadel.  Yet, the infringing website includes email addresses of false contacts and persons not associated with Citadel.

In addition, the infringing web site invites potential investors and prospective employees to contact fake executives for investing and employment information and opportunities.  Thus, Defendants are engaging in illegal activity under Citadel's name, thereby creating the mistaken impression that such operations are authorized by Citadel.

At this stage, Citadel need only show that it has a "better than negligible chance" of succeeding on its trademark infringement and unfair competition claims.  Nav-Aids, Ltd., 2001 U.S. Dist. LEXIS 17619, at *26.  Here, Citadel has far exceeded this minimal burden.

    **2.**    **Citadel is Likely to Prevail on Its Cybersquatting Claim**

Citadel is also likely to succeed on its cybersquatting claim.  Lanham Act § 43(d), 15 U.S.C. §1125(d), commonly known as the "cybersquatting" statute, protects the holder of a trademark against the unauthorized registration and use of an infringing domain name.  Under

6

the relevant provisions of Section 1125(d), a cybersquatter is liable to the owner of a protected mark, if the cybersquatter:

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that –
> > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical of confusingly similar to that mark. . . .

15 U.S.C. § 1125(d).

Furthermore, section 1125(d) provides that "[i]n any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C).

To prevail on a claim under this section, a plaintiff must show that (1) it owns a protected trademark; (2) the domain name that the defendant registered or used is "identical or confusingly similar" to the plaintiff's trademark; and (3) the defendant registered or used the domain names with a bad faith intent to profit. Nike, Inc. v. Circle Group Internet, Inc., 318 F. Supp. 2d 688, 690-91 (N.D. Ill. 2004)(granting plaintiff's motion for summary judgment on its cybersquatting claim); see also Coca-Cola Co. v. Purdy, 382 F.3d 774, 790 (8th Cir. 2004)(affirming the district court's grant of a preliminary injunction for plaintiffs on their cybersquatting claims); Shields, 254 F.3d at 486 (same); Nav-Aids, Ltd. v. Nav-Aids USA, Inc., No. 01-C-0051, 2001 U.S. Dist. LEXIS 17619, at *29 (N.D. Ill. Oct. 25, 2001) (granting plaintiff's motion for preliminary injunction where defendant-distributor continued to use the domain names "navaidssltd.com" and "nav-aidsltd.com" even after plaintiff terminated the

parties' distributorship agreement, and ordering that defendant transfer the domain names to plaintiff pending a resolution on the merits).

Here, Citadel can make a strong showing that Defendants have violated the provisions of Lanham Act § 43(d). First, Defendants have registered and used a domain name that is <u>identical</u> to Citadel's name using an older, cloned version of Citadel's website. In addition, the image CITADEL and corresponding design, registered under number 2,812,459, is copied <u>identically</u> on the infringing web site.

It is also clear that Defendants had a bad faith intent to profit from the use of Citadel's trademarks. Section 1125(d) enumerates nine nonexclusive factors a court may consider in determining bad faith intent to profit, including:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain name which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous

> marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous.

Analysis of the relevant bad faith factors overwhelmingly indicates Defendants' bad faith intent to profit from Citadel's name and marks. As to the first factor, Citadel clearly owns trademark rights to its name by virtue of the Registration Nos. 2,812,459 trademark and the domain name citadelgroup.com. The second factor also weighs heavily in Citadel's favor because the domain name, www.citadel-group.net, as well as the infringing copied images most certainly are commonly used to identify Citadel. Under the third factor, Defendants have not used their infringing website for any bona fide purpose, but rather have used it to intentionally confuse consumers and procure their private password information for unknown, and likely illegal, purposes. Under the fourth factor, Defendants' use of Citadel's trademark does not constitute "fair use." Under the fifth factor, the Defendants' website is intentionally designed to divert and confuse consumers seeking to visit and conduct business with a website affiliated with Citadel. Under factor seven, Defendants have provided false information about employing actual Citadel employees, which they do not. Under the ninth factor, at the time of Defendants' registration of the domain names, Citadel's trademarks were distinctive.

A finding of bad faith need not rest upon every factor listed in the statute. See Nike, Inc., 318 F. Supp. 2d 688, 692. Citadel has far exceeded its minimal burden of succeeding on its cybersquatting claim. See Nav-Aids, Ltd., 2001 U.S. Dist. LEXIS 17619, at *26.

C.  **Adequacy of Legal Remedy and Irreparable Harm**

To be considered "inadequate," a legal remedy need not be "wholly ineffectual"; it must only be "seriously deficient as a remedy for the harm suffered." Salazar, 196 F.3d 809,

9

813. Such is the case here. First, "damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir. 1982). As demonstrated above, Defendants have infringed Citadel's marks. "There is no quantifiable way to measure [Plaintiff's] potential loss … of good will due to the fact that its protectible mark[s] [are] being used by [Defendants] as … domain name[s]." Nav-Aids Ltd., 2001 U.S. Dist. LEXIS 17619, at *28; see Bulova Corp., 144 F. Supp. 2d at 1331 ("Defendant's continued intentional use of the [disputed] mark is generating greater consumer confusion … each passing day – an injury to Plaintiff's reputation and business which cannot easily be quantified or compensated financially."). Only by means of a temporary restraining order can Citadel regain control over the use of its trademarks. Cf. Processed Plastic Co., 675 F.2d at 858. ("Th[e] readiness to find irreparable injury [in trademark infringement cases] arises in part from the realization that [t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods … even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.").

        Second, damages would not compensate Citadel for the damage to its reputation due to Defendants' fraudulent enterprise on the www.citadel-group.net website. "Difficulty of proving damages that would fully compensate a plaintiff for the loss of its good will usually warrant a finding of lack of adequate remedy at law and the prospect of irreparable harm." Instrumental Co. v. Marine Corps. League, 509 F. Supp. 323, 333 (N.D. Ill. 1981), aff'd 694 F.2d 145 (7th Cir. 1982). Defendants' request for website visitors' private passwords gives the impression that Citadel is asking for such information and falsely associates Citadel with

whatever fallout occurs as a result of a visitor providing Defendants with such information. Because it would be extraordinarily difficult for this Court to determine how to calculate the value of this lost goodwill in money terms, a temporary restraining order is necessary.

**D.     Balancing the Hardships and Considering the Public Interest**

If Defendants are permitted to continue to use the www.citadel-group.net website, both Citadel and the public will be harmed.  Absent a temporary restraining order: (1) Citadel will lose the goodwill it has established for its institution; (2) Citadel's customers will lose confidence in the company's ability to conduct transactions online; (3) consumers will be confused about an affiliation between Citadel and the Defendants; and (4) consumers will believe that Citadel is associated with whatever illegal activity Defendants are engaged in by virtue of requesting consumers' private password information.  A temporary restraining order would salvage the value of Citadel's trademarks, preserve public confidence in use of Citadel's true online business, and prevent consumers the confusion of associating Citadel with Defendants' illegal enterprise.  See Nav-Aids Ltd. 2001 U.S. Dist. LEXIS 17619, at *28-29("[T]he public interest tips in favor of [the plaintiff] in this matter.  Customers have an interest in avoiding confusion in the marketplace."); cf. Bulova Corp., 144 F. Supp. 2d at 1331 ([T]here is a public benefit in ensuring that the public is not subject to continued dissemination of misinformation concerning public companies and their products.").

The benefits to Citadel and to the public outweigh the any potential harm to Defendants.  If this Court issues a temporary restraining order, Defendants will be unable to use the infringing domain names, will be required to transfer their unauthorized trademarks to Citadel, and will be prevented from further confusing and defrauding consumers through their misrepresented affiliation with Citadel.

## IV. CONCLUSION

For the reason set forth above, Citadel respectfully requests that this Court enter a temporary restraining order in the form set forth in Plaintiff's Motion for Temporary Restraining Order and Plaintiff's Verified Complaint for Injunctive and Other Relief.

January 25, 2008

By: /s/ Ronald Y. Rothstein
rrothstein@winston.com

Winston & Strawn
Ronald Y. Rothstein
Bryna J. Dahlin
Andrea L. Niemeier
35 W. Wacker Dr.
Chicago, IL 60601
(312) 558-5600

Attorneys for Plaintiff